## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Janet Smith,<br><br>    Plaintiff,<br><br>v.<br><br>Starbucks Corporation,<br><br>    Defendant. | Court File No.:  019-cv-02301-ADM-HB<br><br>**ANSWER AND COUNTERCLAIM**<br><br>**(JURY DEMAND)** |

Except as expressly admitted in this Answer and Counterclaim, Defendant/Counterclaim Plaintiff Starbucks Corporation ("Starbucks") denies every allegation, statement, and characterization in the Complaint of Plaintiff/Counterclaim Defendant Janet Smith ("Smith"). For its Answer and Counterclaim to Smith's Complaint, Starbucks states and alleges as follows:

### **PARTIES, JURISDICTION, AND VENUE**

1.  Starbucks admits that the last-known home address it has on file for Smith is in Hennepin County, Minnesota. Starbucks also admits that Smith was 52 years old and was married at the time her employment was separated. Starbucks lacks information sufficient to admit or deny the remaining allegations in Paragraph 1 of the Complaint, and therefore denies those allegations.

2.  Starbucks admits that it is a Washington corporation and is registered to do business in Minnesota with the Minnesota Secretary of State. Starbucks also admits that Smith generally worked remotely from her home in Hennepin County, Minnesota. Starbucks denies the remaining allegations in Paragraph 2 of the Complaint.

3.   Starbucks admits that Smith's Complaint purports to assert claims under the Minnesota Human Rights Act. Starbucks further admits that certain of the alleged acts underlying the Complaint and Starbucks' Answer and Counterclaims occurred in Minnesota. Starbucks also admits that jurisdiction is proper, under 28 U.S.C. § 1332(a). Starbucks denies the remaining allegations in Paragraph 3 of the Complaint, and specifically denies any violation of the Minnesota Human Rights Act or other illegal action.

4.   Starbucks admits that certain of the alleged acts underlying the Complaint and Starbucks' Answer and Counterclaims occurred in Hennepin County, Minnesota. Starbucks also admits that venue is proper, under 28 U.S.C. § 1441(a). Starbucks denies the remaining allegations in Paragraph 4 of the Complaint.

## FACTS

5.   Starbucks lacks information sufficient to admit or deny the allegations in Paragraph 5 of the Complaint, and therefore denies those allegations.

6.   Starbucks admits that Smith's job application stated that she had graduated from Valpraiso University with a Bachelor's Degree in Civil Engineering.

7.   Starbucks lacks information sufficient to admit or deny the allegations in Paragraph 7 of the Complaint, and therefore denies those allegations.

8.   Starbucks admits that Smith's job application stated that she had previously been employed in the following roles, among others: Vice President, Development for Dunkin' Brands, Inc.; Sr. VP Development for Buca, Inc.; and Vice President Real Estate & Store Development for Caribou Coffee Co. Starbucks lacks information sufficient to admit or

deny the remaining allegations in Paragraph 8 of the Complaint, and therefore denies those allegations.

9.  Starbucks lacks information sufficient to admit or deny the allegations in Paragraph 9 of the Complaint, and therefore denies those allegations.

10. Starbucks admits that in January 2014, it offered Smith a position as "Director, Store Development" (also referred to as "Store Development Director") for its Mid-America region.

11. Starbucks admits the allegations in Paragraph 11 of the Complaint.

12. Starbucks admits the allegations in Paragraph 12 of the Complaint.

13. Starbucks admits that Paragraph 13 of the Complaint includes an accurate description of some of Smith's job duties as a Store Development Director. Starbucks also admits that the Mid-America region is its largest geographic region in the United States.

14. Starbucks admits that in some years during Smith's employment, the Mid-America region Store Development team opened more new locations than were opened in other regions and exceeded some performance expectations and goals. Starbucks denies the remaining allegations in Paragraph 14 of the Complaint.

15. Starbucks admits that in some years during Smith's employment, the Mid-America region was the top growth territory in the United States. Starbucks denies the remaining allegations in Paragraph 15 of the Complaint.

16. Starbucks admits that in certain years during Smith's employment, the Mid-America region Store Development team exceeded new-store revenue projections. Starbucks denies the remaining allegations in Paragraph 16 of the Complaint.

17. Starbucks admits that in certain years during Smith's employment, she was the top-performing Store Development Director on certain performance metrics. Starbucks denies the remaining allegations in Paragraph 17 of the Complaint.

18. Starbucks admits that during Smith's employment, she received discretionary bonuses. Starbucks denies the remaining allegations in Paragraph 18 of the Complaint.

19. Starbucks lacks information sufficient to admit or deny the allegations in Paragraph 19 of the Complaint, and therefore denies those allegations

20. Starbucks lacks information sufficient to admit or deny the allegations in Paragraph 20 of the Complaint, and therefore denies those allegations.

21. Starbucks lacks information sufficient to admit or deny the allegations in Paragraph 21 of the Complaint, and therefore denies those allegations

22. Starbucks admits that in or around January 2019, Smith informed Starbucks that she had received an offer of employment from Mister Car Wash. Starbucks lacks information sufficient to admit or deny the remaining allegations in Paragraph 22 of the Complaint, and therefore denies those allegations.

23. Starbucks lacks information sufficient to admit or deny the allegations in Paragraph 23 of the Complaint, and therefore denies those allegations.

24. Starbucks admits that it offered Smith a retention bonus to remain employed with Starbucks. Starbucks also admits that Kim Williams ("Williams") told Smith that she

would keep an eye out for professional growth opportunities for Smith. Starbucks denies the remaining allegations in Paragraph 24 of the Complaint.

25. Starbucks lacks information sufficient to admit or deny the allegations in Paragraph 25 of the Complaint, and therefore denies those allegations.

26. Starbucks admits that Williams told Smith that she would keep an eye out for professional growth opportunities for Smith. Starbucks denies the remaining allegations in Paragraph 26 of the Complaint.

27. Starbucks admits that it offered Smith, and she accepted, a $25,000 retention bonus, pursuant to a written retention agreement (the "Retention Agreement").

28. Starbucks admits that Smith signed the Retention Agreement on January 9, 2019. Starbucks lacks information sufficient to admit or deny the remaining allegations in Paragraph 28 of the Complaint, and therefore denies those allegations.

29. Starbucks admits that it terminated Smith's employment on April 12, 2019. Starbucks denies the remaining allegations in Paragraph 29 of the Complaint.

30. Starbucks admits the allegations in Paragraph 30 of the Complaint.

31. Starbucks admits that in late January 2019 it received complaints involving Smith and two other members of Store Development team leadership. Starbucks denies the remaining allegations in Paragraph 31 of the Complaint.

32. Starbucks admits the allegations in Paragraph 32 of the Complaint.

33. Starbucks admits that it received complaints from seven members of the Store Development team, that one of the complainants was the administrative assistant for the team, and that the six other complainants were construction representatives who reported

to Daniel Peyton ("Peyton") and/or Jim McNally ("McNally"). Starbucks denies the remaining allegations in Paragraph 33.

34. Starbucks admits that the six complainants who were construction representatives did not report directly to Smith, but affirmatively alleges that they reported indirectly to her.

35. Starbucks denies the allegations in Paragraph 35 of the Complaint.

36. Starbucks admits that prior to learning of the complaints and the resulting investigation regarding Smith and the two other Store Development team leaders, Williams had told Smith that she would keep an eye out for professional growth opportunities for Smith. Starbucks denies the remaining allegations in Paragraph 36 of the Complaint.

37. Starbucks denies the allegations in Paragraph 37 of the Complaint. Starbucks affirmatively states that the complaints regarding Smith and the two other Store Development team leaders were investigated by Starbucks' "Ethics & Compliance" team.

38. Starbucks admits that it did not interview all members of the Store Development Team as part of its investigation but denies any implication that its investigation was not thorough.

39. Starbucks denies the allegations in Paragraph 39 of the Complaint.

40. Starbucks admits that it terminated Smith's employment on April 12, 2019. Starbucks further admits that Smith's employment was terminated because its investigation substantiated complaints that she had: engaged in favoritism toward some members from the real estate side of her team; that she had engaged in a close

relationship with a member of her team; and that she had engaged in, condoned, and encouraged violations of Starbucks standards regarding alcohol use at multiple work events. Starbucks denies the remaining allegations in Paragraph 40 of the Complaint.

41. Starbucks denies the allegations in Paragraph 41 of the Complaint.

42. Starbucks denies the allegations in Paragraph 42 of the Complaint.

43. Starbucks denies the allegations in Paragraph 43 of the Complaint.

44. Starbucks admits that the individual referenced in Paragraph 44 of the Complaint is still employed by Starbucks; but Starbucks denies any implication that Smith and that individual were similarly situated or that Starbucks' treatment of Smith and that individual were in any way influenced by age.

45. Starbucks admits that the individual referenced in Paragraph 45 of the Complaint is younger than Smith but denies any implication that Smith and that individual were similarly situated or that Starbucks' treatment of Smith and that individual were in any way influenced by age.

46. Starbucks admits that it terminated Peyton and McNally's employment. Starbucks denies the remaining allegations in Paragraph 46 of the Complaint.

47. Starbucks admits that substantiated violations of its Close Relationships policy was one of the reasons for the termination of both Peyton and McNally's employment. Starbucks denies the remaining allegations in Paragraph 47 of the Complaint.

48. Starbucks denies the allegations in Paragraph 48 of the Complaint.

49. Starbucks admits that in accordance with its Corrective Action policy, it takes actions to address performance problems and unacceptable behavior that can range from

verbal warning, to written warning, to demotion, suspension or separation from employment, depending on the seriousness of the situation and the surrounding circumstances. Starbucks denies the remaining allegations in Paragraph 49 of the Complaint.

50. Starbucks denies the allegations in Paragraph 50 of the Complaint.

51. Starbucks lacks information sufficient to admit or deny the allegations in Paragraph 51 of the Complaint, and therefore denies those allegations.

52. Starbucks admits the allegations in Paragraph 52 of the Complaint.

53. Starbucks admits that Owen Hutchison ("Hutchinson"), who was already the Store Development Director for another Starbucks region at the time of Smith's separation, has been acting as the temporary Store Development Director for the Mid-America region since the time of Smith's separation. Starbucks denies the remaining allegations in Paragraph 53 of the Complaint.

54. Starbucks admits that Hutchison was 39 years old at the time he began acting as temporary Store Development Director for Starbucks' Mid-America region. Starbucks denies the remaining allegations in Paragraph 54 of the Complaint.

55. Starbucks denies the allegations in Paragraph 55 of the Complaint.

56. Starbucks admits that on or around April 12, 2019, Starbucks called a meeting at which members of the Store Development team were informed that Smith, Peyton and McNally's employment had been separated following an investigation. Starbucks denies the remaining allegations in Paragraph 56 of the Complaint.

57. Starbucks denies the allegations in Paragraph 57 of the Complaint.

58. Starbucks lacks information sufficient to admit or deny the allegations in Paragraph 58 of the Complaint, and therefore denies those allegations.

59. Starbucks denies the allegations in Paragraph 59 of the Complaint.

60. Starbucks lacks information sufficient to admit or deny the allegations in Paragraph 60 of the Complaint, and therefore denies those allegations.

61. Starbucks denies the allegations in Paragraph 61 of the Complaint.

62. Starbucks denies the allegations in Paragraph 62 of the Complaint.

63. Starbucks denies the allegations in Paragraph 63 of the Complaint.

64. Starbucks denies that its statements with respect to Smith were defamatory. Starbucks lacks information sufficient to admit or deny the remaining allegations in Paragraph 64 of the Complaint, and therefore denies those allegations.

65. Starbucks lacks information sufficient to admit or deny the allegations in Paragraph 65 of the Complaint, and therefore denies those allegations.

66. Starbucks lacks information sufficient to admit or deny the allegations in Paragraph 66 of the Complaint, and therefore denies those allegations.

67. Starbucks denies the allegations in Paragraph 67 of the Complaint.

68. Starbucks denies the allegations in Paragraph 68 of the Complaint.

69. Starbucks denies the allegations in Paragraph 69 of the Complaint.

## COUNT I
## Promissory Estoppel

70. Paragraph No. 70 of the Complaint does not set forth separate allegations that require a separate response, except that Starbucks incorporates its responses to Paragraphs 1 through 69 by reference.

71. Paragraph 71 of the Complaint purports to describe the law and, therefore, does not require a separate response; however, insofar as Paragraph 71 is intended to create the implication that Starbucks violated any law, Starbucks denies such implication.

72. Starbucks admits that it paid Smith a retention bonus in consideration for her entering into the Retention Agreement with Starbucks. Starbucks denies the remaining allegations in Paragraph 72 of the Complaint.

73. Starbucks admits that by paying Smith a retention bonus, it intended to induce her to remain employed rather accept a job offer with Mr. Car Wash. Starbucks denies the remaining allegations in Paragraph 73 of the Complaint.

74. Starbucks admits that Smith signed the Retention Agreement, accepted the retention bonus, and did not commence employment with Mr. Car Wash. Starbucks denies the remaining allegations in Paragraph 74 of the Complaint.

75. Starbucks denies the allegations in Paragraph 75 of the Complaint.

76. Starbucks denies the allegations in Paragraph 76 of the Complaint.

## COUNT II
## Defamation

77. Paragraph No. 77 of the Complaint does not set forth separate allegations that require a separate response, except that Starbucks incorporates its responses to Paragraph 1 through 76 by reference.

78. Starbucks denies the allegations in Paragraph 78 of the Complaint.

79. Starbucks denies that it made defamatory statements regarding Smith. Starbucks lacks information sufficient to admit or deny the remaining allegations in Paragraph 79 of the Complaint, and therefore denies those allegations.

80. Starbucks denies the allegations in Paragraph 80 of the Complaint.

81. Starbucks denies the allegations in Paragraph 81 of the Complaint.

82. Starbucks denies the allegations in Paragraph 82 of the Complaint.

## COUNT III[1]
## Violation of the Minnesota Human Rights Act

83. Paragraph No. 83 of the Complaint does not set forth separate allegations that require a separate response, except that Starbucks incorporates its responses to Paragraph 1 through 82 by reference.

84. Paragraph 84 of the Complaint purports to describe the law and, therefore, does not require a separate response; however, insofar as Paragraph 84 is intended to create the implication that Starbucks violated the Minnesota Human Rights Act or otherwise discriminated against Smith because of age, Starbucks denies such implication.

---

[1] Count III is mis-numbered as "Count IV" in the Complaint.

85. Starbucks admits the allegations in Paragraph 85 of the Complaint.

86. Starbucks denies the allegations in Paragraph 86 of the Complaint.

87. Starbucks denies the allegations in Paragraph 87 of the Complaint.

88. Starbucks denies that Smith has been "replaced" and denies the remaining the allegations in Paragraph 88 of the Complaint.

89. Starbucks denies the allegation in Paragraph 89 of the Complaint.

90. Starbucks denies the allegation in Paragraph 90 of the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

91. One or more Counts of the Complaint fails to state a claim upon which relief can be granted against Starbucks.

92. The Complaint is barred by the equitable doctrines of waiver, estoppel, laches, and/or unclean hands.

93. The injuries alleged and damages sought by Smith were caused by Smith's own acts or the acts of people over whom Starbucks exercised no control and/or for whom Starbucks is not responsible.

94. Some or all of Smith's claims for relief are subject to offset, set-off and/or recoupment, including in the amount of the retention bonus reimbursement owed to Starbucks by Smith.

95. Upon information and belief, Smith has failed to mitigate any damages she has allegedly sustained.

96. The alleged damages claimed by Smith are barred to the extent that they are speculative in nature.

97. Starbucks acted at all times toward Smith in good faith and in compliance with the Minnesota Human Rights Act.

98. Although Starbucks denies that any actionable conduct occurred, Smith failed to take advantage of preventive and/or corrective opportunities provided to her or to otherwise avoid any alleged harm.

99. Smith's claims are barred, in whole or in part, because Starbucks did not publish any defamatory statements regarding her.

100. Smith's claims are barred, in whole or in part, because the alleged defamatory statements are not pleaded with the required specificity and particularity.

101. Smith's claims are barred, in whole or in part, insofar as any alleged defamatory statements are not false or defamatory statements of fact and, therefore, are not capable of being proven false.

102. Smith's claims are barred, in whole or in part, insofar as any alleged statements attributable to Starbucks were truthful when made.

103. Smith's claims are barred, in whole or in part, insofar as any alleged defamatory statements made by Starbucks concerning Smith were constitutionally protected expressions of opinion.

104. Smith's claims are barred, in whole or in part, insofar as any alleged defamatory statements made by Starbucks are subject to an absolute and/or qualified privilege.

105. Smith's claims are barred, in whole or in part, insofar as Smith has suffered no loss of reputation.

106. Starbucks reserves the right to add any additional affirmative defenses as necessary.

## STARBUCKS' COUNTERCLAIMS

## THE PARTIES, JURISDICSTION, AND VENUE

107. Starbucks re-alleges its admissions and affirmative statements in the above Paragraphs 1 through 4 with respect to the parties, jurisdiction, and venue.

## FACTS

108. In late 2018 or early 2019, Smith informed Starbucks that she had received an offer of employment from Mr. Car Wash.

109. On January 9, 2019, Smith and Starbucks entered into a written agreement (the "Retention Agreement"), under which Smith agreed to forego the offer of employment from Mr. Car Wash and Starbucks agreed to provide Smith with a $25,000 retention bonus (a copy of the Retention Agreement is attached as "Exhibit A").

110. The Retention Agreement provided that, if Smith voluntarily left Starbucks or was separated due to misconduct within 365 days of the retention bonus pay-out date, Smith would reimburse Starbucks a pro-rata portion of the retention bonus.

111. Starbucks paid the $25,000 retention bonus to Smith on January 18, 2019.

112. Smith's employment was separated due to misconduct on April 12, 2019.

113. Smith has failed to repay Starbucks the pro-rata portion of her retention bonus, totaling approximately $19,178, as required under the Retention Agreement.

## COUNT I: BREACH OF CONTACT

114. Starbucks re-alleges the allegations contained in the above Paragraphs 107 through 113.

115. The Retention Agreement is a valid and enforceable contract.

116. Smith entered into the Retention Agreement with Starbucks for adequate consideration, including payment of a retention bonus.

117. Starbucks has performed all its duties and obligations under the Retention Agreement, including paying Smith a $25,000 retention bonus.

118. Smith has failed to perform all her duties and obligations under the Retention Agreement; namely, she has failed to repay Starbucks a pro-rata portion of her retention bonus—totaling approximately $19,178—following the termination of her employment for misconduct, as required under the Retention Agreement.

119. As a direct and proximate result of Ms. Smith's breach, Starbucks has suffered and will continue to suffer monetary losses in the amount of the approximately $19,178 pro-rata share of the retention bonus owed to Starbucks by Smith, plus interest.


## REQUEST FOR RELIEF

WHEREFORE, Defendant/Counterclaim Plaintiff Starbucks prays that the Court enter judgment against Plaintiff/Counterclaim Defendant Smith as follows:

1. Dismiss Smith's Complaint in its entirety and with prejudice;

2. Deny Smith's request for attorneys' fees and costs;

3. Award Starbucks $19,178 in compensatory damages for its counterclaim;

4.  Award Starbucks its attorneys' fees, costs, and pre-judgment and post-judgment

interest to the extent permissible by law; and

5.  Grant such further relief as the Court deems just and equitable.


Dated:  August 27, 2019                    NILAN JOHNSON LEWIS PA


By: s/Mark J. Girouard
      Mark J. Girouard (#0302880)
      Sarah Riskin (#0388870)
      Nicole F. Dailo (#0398129)
      120 South Sixth Street, Suite 400
      Minneapolis, MN 55402
      Phone: (612) 305-7500
      Fax: (612) 305-7501
      mgirouard@nilanjohnson.com
      sriskin@nilanjohnson.com
      ndailo@nilanjohnson.com

      *Attorneys for Defendant Starbucks*
      *Corporation*